

# United States Court of Appeals
## for the
# Third Circuit

Case No. ___

CRYSTALLEX INTERNATIONAL CORP.,

*Plaintiff-Respondent,*

-v-

PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; and CITGO HOLDING,
INC., f/k/a PDV America, Inc.,

*Defendant-Petitioner.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE DENYING, IN PART, DEFENDANT PDV HOLDING, INC.'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
CIVIL ACTION NO. 1:15-cv-01082-LPS
SAT BELOW: HONORABLE LEONARD P. STARK, U.S.D.J.

## PETITION OF DEFENDANT-PETITIONER PDV HOLDING, INC. FOR LEAVE TO FILE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

EIMER STAHL LLP
224 S. MICHIGAN AVE., SUITE 1100
CHICAGO, IL 60604
(312) 660-7600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
WILMINGTON, DE 19801
(302) 351-9294

NATHAN P. EIMER
LISA S. MEYER

KENNETH J. NACHBAR

*Attorneys for Defendant-Petitioner*

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and**
**Statement of Financial Interest**

No. _____

Crystallex International Corp

v.

Petroleos de Venezuela, S.A.,
PDV Holding, Inc., and
CITGO Holding, Inc., f/k/a PDV America, Inc.

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, **PDV Holding, Inc.**
makes the following disclosure:                          (Name of Party)

    1) For non-governmental corporate parties please list all parent corporations: Petroleos de Venezuela, S.A.

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

Petroleos de Venezuela, S.A.

    3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

    4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

**Nathan P. Eimer**      Dated: **1/6/2017**
(Signature of Counsel or Party)

rev: 09/2014      (Page 2 of 2)

## TABLE OF CONTENTS

INTRODUCTION .......................................................................... 1

FACTUAL BACKGROUND ......................................................... 2

QUESTIONS CERTIFIED .......................................................... 8

ARGUMENT ............................................................................... 9

   I.  THE COURT SHOULD GRANT LEAVE TO APPEAL ON
      THE FSIA ISSUE................................................................ 10

      A.  Controlling Question of Law .............................................. 11

      B.  Substantial Ground for Difference of Opinion .................. 13

      C.  May Materially Advance the Ultimate Termination
         of the Litigation .................................................................. 15

      D.  Exceptional Circumstances ................................................ 16

  II.  THE COURT SHOULD GRANT LEAVE TO APPEAL ON
      THE DUFTA ISSUE .......................................................... 19

      A.  Controlling Question of Law .............................................. 20

      B.  Substantial Ground for Difference of Opinion .................. 20

      C.  May Materially Advance the Ultimate Termination
         of the Litigation .................................................................. 22

      D.  Exceptional Circumstances ................................................ 23

CONCLUSION............................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Beazer E., Inc. v. Mead Corp.,*
    2006 WL 2927627 (W.D. Pa. Oct. 12, 2006) ....................................13

*Chase Bank USA, N.A. v. Hess*, Civ. A.,
    2011 WL 4459604 (D. Del. Sept. 26, 2011).................................9, 10

*Chase Manhattan Bank v. Iridium Africa Corp.,*
    324 F. Supp. 2d 540 (D. Del. 2004).....................................17, 22, 23

*Conn. Bank of Commerce v. Republic of Congo,*
    309 F.3d 240 (5th Cir. 2002) .............................................................17

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) ....................................................................10, 16

*Dahlstrom v. Sun-Times Media, LLC,*
    39 F. Supp. 3d 998 (N.D. Ill. 2014)..................................................15

*Fisons, Ltd. v. United States,*
    458 F.2d 1241 (7th Cir. 1972) ...........................................................10

*Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.,*
    664 F.2d 377 (3d Cir. 1981)...............................................................16

*Johnson v. Alldredge,*
    488 F.2d 820 (3d Cir. 1973)...............................................................20

*Katz v. Carte Blanche Corp.,*
    496 F.2d 747 (3d Cir. 1974).................................................11, 16, 20

*Klapper v. Commonwealth Realty Trust,*
    662 F. Supp. 235 (D. Del. 1987) .......................................................20

*Klauder v. ECHO/RT Holdings, LLC*, No. 133, 2016 WL 7189917
    (Del. Dec. 12, 2016) ..................................................................21

*Klinghoffer v. S.N.C. Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990)....................................................13, 14, 17

*Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel,*
    657 F.3d 1159 (11th Cir. 2011) .................................................10, 14

*Peterson v. Islamic Republic of Iran,*
    627 F.3d 1117 (9th Cir. 2010) ..........................................................17

*Phil. v. Pimentel,*
    553 U.S. 851 (2008) .........................................................................17

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,*
    771 F.3d 980 (7th Cir. 2014) ............................................................14

*S&S Mach. Co. v. Masinexportimport,*
    706 F.2d 411 (2d Cir. 1983)........................................................14, 18

*S.E.C. v. Credit Bancorp, Ltd.,*
    103 F. Supp. 2d 223 (S.D.N.Y. 2000)................................................22

*Sikkelee v. Precision Airmotive Corp.,*
    822 F.3d 680 (3d Cir. 2016)..............................................................12

*Spong v. Fidelity Nat'l Property & Cas. Ins. Co.,*
    787 F.3d 296 (5th Cir. 2015) ............................................................12

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC,*
    2016 WL 769586 (Del. Ch. Feb. 18, 2016).......................................21

*Stephens v. Nat'l Distillers & Chem. Corp.,*
    69 F.3d 1226 (2d Cir. 1995)..................................................11, 14, 15

*Wickes Trust*, No. Civ. A. 2515-VCS,
    2008 WL 4698477 (Del. Ch. Oct. 16, 2008) .....................................21

*Wonderland Nurserygoods Co. v. Thorley Indus., LLC*, Civ. A.,
    2014 WL 5325353 (W.D. Pa. Oct. 20, 2014) ....................................13

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
    516 U.S. 199 (1996) .........................................................................10

## STATUTES

28 U.S.C. § 1292(b) ........................................................................Passim

28 U.S.C. § 1602.....................................................................................1

28 U.S.C. § 1609........................................................................4, 8, 10

28 U.S.C. § 1610(a)(6), (c) .................................................................4

6 Del. C. § 1301 .................................................................................1, 3

6 Del. C. § 1301(12)............................................................................22

6 Del. C. § 1304(a)(1) .......................................................................3, 8

## RULES

Fed. R. App. P. 32(a)(5)–(6) ...........................................................24

Fed. R. App. P. 32(a)(7)(B) .............................................................24

Fed. R. App. P. 32(a)(7)(B)(iii)........................................................24

Federal Rule of Civil Procedure 12(b)(6) .....................................3

# INTRODUCTION

Defendant PDV Holding, Inc. ("PDVH") petitions this Court to exercise appellate jurisdiction over the two controlling questions of law certified by the District Court pursuant to 28 U.S.C. § 1292(b). The District Court was correct when it said this case involves "complex questions of statutory interpretation" and an "apparently unprecedented [legal] theory . . . [falling] between two sets of strong, well-supported, and persuasive arguments" that affect "several related cases" and implicate both "international comity" and "enormous sums of money." D.I. 55 at 3-5. An immediate appeal will serve to ensure that the precepts of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et. seq.* ("FSIA"), are respected, that the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301, *et. seq.* ("DUFTA"), is not stretched to its breaking point, and that the District Court will not waste judicial resources on related cases that would warrant immediate dismissal should this Court reverse the District Court's rulings on interlocutory review.

1

## FACTUAL BACKGROUND

Plaintiff Crystallex International Corporation ("Crystallex") is a Canadian company that was engaged in a gold mining operation in the Bolivarian Republic of Venezuela ("Venezuela"). In 2011, Crystallex initiated an arbitration proceeding against Venezuela before the World Bank's International Centre for Settlement of Investment Disputes in Washington, D.C. based on a bilateral treaty between Canada and Venezuela. At the time the Complaint in this case was filed, no award had been issued in that arbitration.[1]

Despite the lack of any arbitration award against Venezuela, Plaintiff filed this suit in November 2015 against Defendants Petróleos de Venezuela, S.A. ("PDVSA"), PDVH, and CITGO Holding, Inc. ("CITGO Holding"), alleging claims under DUFTA and common-law civil conspiracy. PDVSA is the state-owned oil company of Venezuela; PDVH, a Delaware corporation, is PDVSA's wholly-owned subsidiary; CITGO Holding, another Delaware corporation, is PDVH's wholly-owned subsidiary.

---

[1] An arbitration award was issued in April 2016, and Plaintiff is currently seeking to reduce that award to judgment. The deficiencies of the Complaint hinge on the state of affairs at the time it was filed.

In the Complaint, Plaintiff, "as an existing and future creditor of" Venezuela, D.I. 1 at ¶ 1, alleged that a series of dividend payments from CITGO Holding to PDVH and from PDVH to PDVSA were undertaken by Venezuela through its putative alter ego PDVSA in order to expropriate funds from the United States in an effort to hinder Venezuela's creditors from executing on what Crystallex anticipated would be a hefty arbitration award from the World Bank proceeding.

On February 3, 2016, PDVH and CITGO Holding (together, "the CITGO Defendants") moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  The CITGO Defendants argued that Plaintiff had not stated a claim under DUFTA because the allegedly fraudulent transfers were not made "by a debtor," 6 Del. C. § 1304(a)(1), (Plaintiff's debtor being, instead, Venezuela) and did not involve "property of a debtor," *id.* § 1301(2), (12), as required by DUFTA.

Further, to the extent that any transfer did involve the debtor's property, the CITGO Defendants argued that the DUFTA claim was

---

[2] PDVSA separately moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on July 25, 2016.  PDVSA's motion remains pending.

preempted by the FSIA, which bars the application of any state law, court process, or order that immobilizes the assets of a foreign sovereign in advance of a judgment against the sovereign. Specifically, the FSIA requires that a party seeking to attach allegedly foreign sovereign property must comply with clear procedures laid out in the statute, including—most importantly—reducing an arbitral award to a judgment in a U.S. court.[3]  28 U.S.C. § 1610(a)(6), (c).  The CITGO Defendants argued that because Plaintiff's DUFTA claim was alleged before any such judgment (hereinafter "the D.C. Judgment"), Plaintiff sought to make an end-run around the FSIA's attachment immunity provision, 28 U.S.C. § 1609, by seeking to encumber allegedly foreign sovereign funds via state fraudulent transfer laws before they were reachable under U.S. law.  In addition, the CITGO Defendants argued that Plaintiff had not stated a claim for civil conspiracy and that the act of state doctrine barred Plaintiff's claims.

On September 30, 2016, the District Court issued its Memorandum Opinion and Order granting in part and denying in part

---

[3] Plaintiff is pursuing such a judgment in the District Court in Washington, D.C., but it has not yet come to resolution, and was certainly not in existence at the time of the alleged fraudulent transfer. *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, C.A. No. 16–661–RC (D.D.C.).

the CITGO Defendants' motion to dismiss. D.I. 34, 35. The District Court dismissed the civil conspiracy claim against both defendants and the DUFTA claim against CITGO Holding. D.I. 34 at 12-14. However, the District Court declined to dismiss the DUFTA claim against PDVH. *Id.* at 12. It reasoned that the transfer of a dividend from PDVH to PDVSA involved "property of a debtor" and that, although this transfer was not "directly" executed "by a debtor," and although Plaintiff did not allege that the corporate veil should be pierced between PDVSA and its subsidiary, PDVH, it was nonetheless sufficient that the payment of the dividend was alleged to have been "orchestrated by and carried-out under orders from Venezuela and/or [PDVSA] . . . ." *Id.* at 10. Thus, the District Court held that PDVH's "continued presence in this [DUFTA] action" as a "non-debtor transferor" was appropriate. *Id.* at 11.

The District Court likewise rejected the argument that the FSIA preempted Plaintiff's claim, reasoning that, even though the transfer at issue took place prior to the entry of judgment against Venezuela and, therefore, the property at issue was "immune from attachment when the transfer was made," *id.* at 15, PDVH could still face liability for its prejudgment transfer of sovereign property, because "[p]ursuing a

remedy based on a prejudgment transfer is not the same as attaching

funds prior to the entry of judgment, even if the pursuit of that remedy

might discourage transfers of immunized property under certain

circumstances." *Id.* at 16-17. Notably, when considering whether

Plaintiff was seeking to restrain sovereign property "prejudgment," the

District Court focused on the potential judgment on the DUFTA claims

as opposed to the D.C. Judgment on Plaintiff's arbitration claims, which

PDVH argues is the lynchpin on which its FSIA preemption argument

turns.[4] *See id.* at 17 n.15.

PDVH has already filed an appeal in this Court on the FSIA issue

pursuant to the collateral order doctrine. D.I. 40.[5] In order to ensure

that the related DUFTA issue was brought to this Court

simultaneously, PDVH also filed a motion to certify the District Court's

Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), seeking

review of its holdings on both the preemptive effect of the FSIA ("the

FSIA Issue") and DUFTA's purported extension to "non-debtor

---

[4] Not relevant to this appeal, the District Court also declined to apply the act of state doctrine to bar the claim at this stage of the proceedings. *Id.* at 19-20.

[5] The collateral appeal has been given the case number 16-4012.

6

transferors" ("the DUFTA Issue").  D.I. 41, 42.  After briefing and oral

argument, the District Court granted PDVH's motion in full on

December 27, 2016.  D.I. 55.  Judge Stark concluded that "all three of

[the § 1292(b) statutory] criteria are satisfied with respect to both the

FSIA and DUFTA issues" and that "'exceptional circumstances' are also

present which further persuade the Court to exercise its discretion to

certify both issues for an interlocutory appeal."  *Id.* at 3.  PDVH now

petitions this Court to exercise its appellate jurisdiction over the

questions certified by Judge Stark for immediate review.  If this

petition is granted, PDVH intends to seek reversal of the District

Court's opinion on both fronts.[6]

Two additional cases are implicated by the District Court's

decision here.  First, Crystallex filed a second DUFTA suit against

PDVH on October 28, 2016, based on a transfer that occurred after the

litigation in this matter had begun:  *Crystallex Int'l Corp. v. PDV*

---

[6] On December 23, 2016, the Clerk's office sent the parties a letter asking whether the collateral appeal should be stayed pending the District Court's resolution of this § 1292(b) motion (and, presumably, this ensuing petition) and PDVSA's motion to dismiss; PDVH filed a letter today (January 6, 2017) expressing its position that, because the appeals involve—or will involve—the same legal issues, such a stay should be entered and that the collateral appeal, this § 1292(b) appeal, and any future appeal by PDVSA should be considered together.

*Holding, Inc.*, No. 1:16-cv-01007-LPS (D. Del.) ("*Crystallex II*"). In the suit, Plaintiff's sole ground for alleging the creditor-debtor relationship between it and PDVH, as required by DUFTA, is the pending litigation in *this matter* ("*Crystallex I*"). In other words, *Crystallex II* is predicated on the existence of *Crystallex I*; if *Crystallex I* is dismissed, *Crystallex II* will be dismissed as well. Second, in *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, No. 1:16-cv-00904 (D. Del.), different plaintiffs assert substantially similar DUFTA claims against largely the same defendants Crystallex sued in *Crystallex I* based, in part, on the same transaction. The case implicates the exact same DUFTA and FSIA issues as this matter.

## QUESTIONS CERTIFIED

The District Court certified the FSIA and DUFTA Issues, respectively, for interlocutory review:

1. Whether the FSIA attachment immunity provisions, 28 U.S.C. §§ 1609-1611, preempt state fraudulent transfer laws to the extent that they effectively restrain immunized property of a foreign sovereign debtor or impose liability on non-debtor transferors for prejudgment transfers of immunized property.

2. Whether the phrase "by a debtor" in DUFTA, 6 Del. C. § 1304(a)(1), applies to "non-debtor transferors" deemed to be acting on the

debtor's behalf, absent allegations of alter ego or piercing the corporate veil.[7]

## ARGUMENT

The District Court properly concluded that its Order meets the criteria for interlocutory review, and this Court should now exercise its discretion to hear the appeal. Plaintiff's "apparently unprecedented fraudulent transfer theory required the [District] Court to resolve novel questions of law," D.I. 55 at 3, implicating "international comity" and "enormous sums of money," *id.* at 5. Resolving these issues now is important in its own right, and would "materially advance" this and "several related cases." *Id.* at 4.

Under 28 U.S.C. § 1292(b), a district court may certify a non-final order for interlocutory appeal where (1) the "order involves a controlling question of law," (2) about which "there is substantial ground for difference of opinion," and (3) "immediate appeal from the order may materially advance the ultimate termination of the litigation."[8] Once

---

[7] These two questions are lifted verbatim from the District Court's Order granting PDVH's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). D.I. 55 at 6.

[8] In addition to these three statutory criteria, the United States District Court for the District of Delaware considers whether there are "exceptional circumstances justifying the need for immediate review" under § 1292(b). *E.g.*, *Chase Bank USA, N.A. v. Hess*, Civ. A. No. 08-121-LPS, 2011 WL 4459604, at *2 (D.

certified, the party seeking immediate review "has the burden of
persuading the court of appeals that exceptional circumstances justify a
departure from the basic policy of postponing appellate review until
after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437
U.S. 463, 475 (1978) (quoting *Fisons, Ltd. v. United States*, 458 F.2d
1241, 1248 (7th Cir. 1972)). If convinced, this Court may exercise its
discretion to assert appellate jurisdiction over the case, *see* § 1292(b),
and review "any question that is included within [an] order that
contains [a] controlling question of law identified by the district court."
*Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 204 (1996).

## I.   THE COURT SHOULD GRANT LEAVE TO APPEAL ON THE FSIA ISSUE.

The District Court's decision to reject PDVH's argument that
Sections 1609-1611 of the Foreign Sovereign Immunities Act preempt
Plaintiff's DUFTA claim addressed a novel issue under the FSIA and
implicates core international comity concerns. The FSIA creates a
presumption that a foreign sovereign's property is immune from arrest
or attachment. 28 U.S.C. § 1609; *see, e.g., Odyssey Marine Expl., Inc. v.*

---

Del. Sept. 26, 2011); *see also* D.I. 55 at 5. In order to track the District Court's
opinion, PDVH, too, presents arguments as to "exceptional circumstances"
separately from the three criteria listed in the statute.

*Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1175 (11th Cir. 2011).

This reflects a policy decision by Congress, which decided that the FSIA

was to be the "exclusive means" for pursuing actions involving a foreign

state or a foreign state's property. *See Stephens v. Nat'l Distillers &*

*Chem. Corp.*, 69 F.3d 1226, 1230 (2d Cir. 1995), *as amended* (Jan. 11,

1996). The FSIA requires dismissal of Plaintiff's claim against PDVH

because the claim would nullify a sovereign's prejudgment transfer of

assets.[9] The District Court was correct that its conclusion to the

contrary warrants immediate, interlocutory review.

## A.    Controlling Question of Law

As the District Court recognized, its "conclusions regarding th[is]

purely legal issue[] were dispositive and would require dismissal of the

action if reversed on appeal," D.I. 55 at 3; the FSIA issue therefore is a

controlling question of law. *Katz v. Carte Blanche Corp.*, 496 F.2d 747,

755 (3d Cir. 1974) (en banc) (describing a "controlling issue of law" as

one that, if resolved the opposite way on appeal, "would result in a

---

[9] For purposes of this petition only, PDVH accepts Plaintiff's contention that
PDVSA and Venezuela are alter egos and accepts the District Court's determination
that the dividend transferred from PDVH to PDVSA was the property of Venezuela
at the moment the dividend was declared. PDVH reserves the right to challenge
both contentions should this Court hear this appeal.

reversal of [the district court's] judgment after final hearing"). If this Court were to conclude that, contrary to the District Court's holding, the FSIA preempts efforts to use state fraudulent transfer laws to circumvent FSIA attachment immunity, Plaintiff's sole remaining claim against PDVH—its DUFTA claim—would no longer be viable.

Only last year, this Court considered a question of preemption to be worthy of interlocutory review. In *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680 (3d Cir. 2016), *cert. denied*, --- S. Ct. ---, 2016 WL 4944476 (Nov. 28, 2016), this Court considered on interlocutory review—upon certification of the question by the district court— whether the Federal Aviation Act preempts state tort law standards of care. *Id.* at 683, 709. Other courts of appeals and district courts have done the same. *See, e.g., Spong v. Fidelity Nat'l Property & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015) ("Whether federal law preempts the Spongs' [state law] claims certainly falls within the ambit of 28 U.S.C. § 1292(b)['s "controlling question of law" criterion].").

### B.    Substantial Ground for Difference of Opinion

There is "substantial ground for difference of opinion" where a controlling question of law is novel, *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (noting that "issues [that] are difficult and of first impression" generate "substantial grounds for difference of opinion"), or where it has been subject to "conflicting interpretations from numerous courts," *Wonderland Nurserygoods Co. v. Thorley Indus., LLC*, Civ. A. No. 12-196, 2014 WL 5325353, at *3 (W.D. Pa. Oct. 20, 2014) (quoting *Beazer E., Inc. v. Mead Corp.*, No. 91-408, 2006 WL 2927627, at *2 (W.D. Pa. Oct. 12, 2006)).  The FSIA Issue meets either standard.

Although it is well-settled that the FSIA prevents plaintiffs from utilizing state law to prevent foreign sovereigns from transferring their property unless the FSIA's conditions are met, the District Court observed in its opinion on the motion to dismiss that "[n]either the parties nor the Court have identified any case on point" regarding the exact question at issue here: the preemptive effect of the FSIA on state fraudulent transfer laws.  D.I. 34 at 16.  Here, the lack of a precise precedent is not a sign that there is no substantial ground for difference of opinion; it is a sign of the extent to which Plaintiff's legal theory

13

departs from accepted law. And to the extent it argues as much,
Plaintiff is wrong that novelty—without a clear conflict among courts—
is insufficient to warrant immediate review. *Klinghoffer*, 921 F.2d at
25; D.I. 55 at 3-4 ("The Court disagrees with Crystallex's suggestion
that this criterion for § 1292(b) certification cannot be satisfied where
there are no conflicting decisions issued by courts previously grappling
with the issue.").

Moreover, conflict does exist. Several Circuit Courts considering
FSIA attachment immunity have held its reach to be much broader
than suggested by the District Court's interpretation. *See, e.g., Pine
Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d
980, 984 (7th Cir. 2014) (holding that whether a practice is barred by
FSIA immunity "should turn on that requirement's effect—rather than
its procedural particulars"); *Odyssey Marine Expl.*, 657 F.3d at 1178-79
(concluding that a district court lacks jurisdiction over a foreign
sovereign's property regardless of whether the sovereign was in
possession of the property at the time of its arrest); *Stephens*, 69 F.3d at
1230 (stating that "the principle behind the [FSIA's] prohibition against
[prejudgment] attachments should apply broadly"); *S&S Mach. Co. v.*

14

*Masinexportimport*, 706 F.2d 411, 412, 416, 418 (2d Cir. 1983) (holding the definition of prejudgment "attachment" for the purposes of the FSIA includes "any other means to effect the same result"). The District Court's interpretation of what constitutes prejudgment attachment is in conflict with the broad scope and purpose of FSIA attachment immunity recognized by other courts—including those courts that have considered the preemptive effect of the FSIA on state-law processes that encumber a sovereign's property. *E.g.*, *Stephens*, 69 F.3d at 1231-21.[10] This Court should thus weigh in now to correct the District Court's decision and thereby ensure the FSIA's protections are not rendered toothless in the Third Circuit.

## C.    May Materially Advance the Ultimate Termination of the Litigation

Because the preemptive effect of the FSIA presents a threshold immunity issue that could dispose of Plaintiff's DUFTA claim (and thereby the entire suit), reversal by this Court would provide a more efficient disposition than proceeding with discovery and further

---

[10] Furthermore, the District Court's departure from the clear text of the FSIA warrants interlocutory review. *E.g.*, *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1002 (N.D. Ill. 2014) ("[C]ompeting [statutory] interpretations—both of them defensible and neither of them precluded by binding precedent—evidence substantial grounds for difference of opinion").

litigation. D.I. 55 at 4 ("If the Third Circuit agrees with PDVH and reverses one or both of this Court's holdings, this case would be terminated upon remand."). As such, this case clearly satisfies the third § 1292(b) criterion, which embodies the purpose behind § 1292(b): saving courts and litigants the time and expense of lengthy proceedings when a suit can be disposed of by resolution of the controlling question of law. *See Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981) ("[Section 1292(b)] is designed to allow for early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation."); *Katz*, 496 F.2d at 755. Importantly, this Court does not seek certainty that interlocutory review will be more efficient, but merely that it "may" be. *Ford Motor Credit Co.*, 664 F.2d at 380; *accord* D.I. 55 at 4.

## D.    Exceptional Circumstances

Last, as the District Court held, D.I. 55 at 5, this case presents "exceptional circumstances" justifying the exercise of § 1292(b)'s permissive appeal. *Coopers & Lybrand*, 437 U.S. at 475. First, the *Crystallex II* and *ConocoPhillips* cases pending before the District Court turn on the very issues at stake in this case, and both would require

16

dismissal if the Third Circuit reversed the District Court's holding on the FSIA issue. Courts consider "the impact that an appeal will have on other cases" when "deciding whether to accept an appeal that has been properly certified by the district court," *Klinghoffer*, 921 F.2d at 24, and the presence of such cases counsels in favor of immediate review, *e.g.*, *Chase Manhattan Bank v. Iridium Africa Corp.*, 324 F. Supp. 2d 540, 545-46 (D. Del. 2004).

Second, the District Court's Order impedes the purpose behind FSIA attachment immunity: preserving the dignity of foreign sovereigns by preventing creditors from encumbering sovereign property with prejudgment restraints. *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1127 (9th Cir. 2010) (noting that judicial interference with the property of a foreign state "may be regarded as an affront to its dignity and may affect our relations with it") (quoting *Phil. v. Pimentel*, 553 U.S. 851 (2008)); *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 253 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002) ("One of the chief motifs of the FSIA is to limit as much as possible disrupting the 'public acts' or '*jure imperii*' of sovereigns").

17

If left unchecked, the DUFTA stratagem devised by Plaintiff—a
ploy the District Court referred to as a "creative and apparently
unprecedented fraudulent transfer theory," D.I. 55 at 3—could be
employed by any potential judgment creditor of a foreign sovereign,
effectively creating a secondary legal regime governing the movement of
foreign sovereign property and threatening both sovereigns and third
parties such as PDVH with massive liability for transferring such
property.  In such a scenario, banks or other entities currently holding
foreign-owned assets will hesitate before transferring those assets for
fear of incurring potentially massive liability under a state fraudulent
transfer statute.  *See* D.I. 34 at 16-17 (acknowledging that allowing
DUFTA claims to proceed "might discourage transfers of [FSIA]
immunized property under certain circumstances").  By thus chilling
the transfer of foreign-owned assets, the District Court's opinion could
interfere with foreign relations and/or do real harm to the sovereignty
interests that the FSIA is designed to protect.  *See S&S Mach. Co.,* 706
F.2d at 418 (noting that "the FSIA would become meaningless" if the
ban on prejudgment attachments were not interpreted to preclude
attachments as well as "any other means to effect the same result");
*accord* D.I. 55 at 5 ("[I]nternational comity is implicated by this case

and specifically by the issues this Court has already decided[;] . . . there

is at least some risk of unintended international consequences, which

sets this case apart from the vast majority of others.").

In short, the ripple effects of the Court's decision on the FSIA's

statutorily granted immunity could be significant and therefore present

the type of exceptional circumstances § 1292(b) was designed to

address.  *Accord* D.I. 55 at 5 (describing as an "exceptional

circumstance" that "an interlocutory appeal holds the promise of

eliminating any risk of . . . an unintended consequence and doing so

relatively quickly.").

## II.    THE COURT SHOULD GRANT LEAVE TO APPEAL ON THE DUFTA ISSUE.

In addition to the FSIA, the District Court's Order offered a

sweeping and novel view of the scope of DUFTA, one broad enough to

expand the scope of the statute in unanticipated ways.  The District

Court itself has acknowledged that "Plaintiff's DUFTA claim strains the

statute's structure," D.I. 34 at 12, but it still allowed the claim to

proceed.  Specifically, the District Court rejected PDVH's argument

that, in order to state a claim under DUFTA, a plaintiff must allege a

transfer "by a debtor" or alter ego of the debtor, and held that in this

case PDVH could be liable as a "non-debtor transferor" due to its

payment of a dividend to its parent, PDVSA, allegedly at the behest of

the debtor (i.e., Venezuela).  This conclusion, too, warrants immediate,

interlocutory review.

### A.    Controlling Question of Law

The District Court's holding on the DUFTA Issue presents a

controlling question of law, as a reversal of this issue—i.e., that PDVH,

as a non-debtor, is not subject to liability under the statute—would lead

to the dismissal of the only remaining claim against PDVH.  *See, e.g.,*

*Katz*, 496 F.2d at 755; *Klapper v. Commonwealth Realty Trust*, 662 F.

Supp. 235, 236 (D. Del. 1987) (noting that questions that would result

in the termination of the litigation are "particularly well suited for an

interlocutory appeal"); *accord* D.I. 55 at 3 (concluding that reversal of

the DUFTA issue "would require dismissal").  Moreover, as a purely

legal question that will require no additional fact finding, it is the type

of question appropriate for certification.  *See, e.g., Johnson v. Alldredge*,

488 F.2d 820, 822 (3d Cir. 1973).

### B.    Substantial Ground for Difference of Opinion

The DUFTA Issue presents substantial ground for difference of

opinion as there is both a lack of authority supporting the Court's

interpretation and state court precedent suggesting the opposite result.
As the District Court pointed out, it faced an "absence of specific
guidance from the Supreme Court of Delaware" as to the meaning of
DUFTA's language.  D.I. 34 at 5.  But PDVH cited persuasive Delaware
Chancery Court authority in support of the proposition that DUFTA
requires a transfer made "by a debtor" (not a "non-debtor transferor"),
either directly or through an alter ego.  *See In re Wickes Trust*, No. Civ.
A. 2515-VCS, 2008 WL 4698477, at *7-8 (Del. Ch. Oct. 16, 2008)
(observing that because DUFTA only covers transfers made by a *debtor*
as to its *creditor*, "in order to have a fraudulent transfer claim, one must
first have a valid claim against the person . . . alleged to have
fraudulently made the transfer"); *see also Spring Real Estate, LLC v.
Echo/RT Holdings, LLC*, C.A. 7994-VCN, 2016 WL 769586, at *3 (Del.
Ch. Feb. 18, 2016), *aff'd sub nom. Klauder v. ECHO/RT Holdings, LLC*,
No. 133, 2016 WL 7189917, at *3 (Del. Dec. 12, 2016)[11] (denying
standing for a fraudulent conveyance claim against a non-debtor
subsidiary company where there had been no allegation by the creditor

---

[11] As indicated in the citation for *Spring Real Estate* above, the Delaware
Supreme Court affirmed the Chancery Court's decision in this case after the District
Court had ruled on PDVH's motion to dismiss.  *Klauder*, 2016 WL 7189917, at *3.

to support piercing the debtor parent company's corporate veil).  The

Court declined to follow this authority, relying instead on the Merriam-

Webster Dictionary and concluding that DUFTA liability extends to

"non-debtor transferors" acting on behalf of a debtor itself.[12]  D.I. 34 at

9-12.  The lack of authority supporting the Court's ruling and the

presence of authority opposing it evidences substantial ground for

difference of opinion.  *See Chase Manhattan Bank*, 324 F. Supp. 2d. at

545.

## C.    May Materially Advance the Ultimate Termination of the Litigation

Interlocutory review will also materially advance the ultimate

termination of this litigation, as a reversal on the DUFTA issue would

lead to PDVH's dismissal.  *See S.E.C. v. Credit Bancorp, Ltd.*, 103 F.

Supp. 2d 223, 227 (S.D.N.Y. 2000) ("Although technically the question

of whether there is a controlling issue of law is distinct from the

question of whether certification would materially advance the ultimate

---

[12] DUFTA's coverage of "indirect" fraudulent transfers, 6 Del. C. § 1301(12), still requires that such an indirect transfer be undertaken *by a debtor*, not a "non-debtor transferor" like PDVH.

22

termination of the litigation, in practice the two questions are closely connected.").[13]

## D.    Exceptional Circumstances

Finally, immediate review of the District Court's interpretation of DUFTA is appropriate on account of "exceptional circumstances."  First, an immediate appeal will conserve judicial resources as this same question regarding the proper interpretation of the DUFTA statute will be at issue in the *ConocoPhillips* litigation.  *See Chase Manhattan Bank*, 324 F. Supp. 2d at 545-46.  Furthermore, reversal of the DUFTA Issue would immediately knock both *Crystallex I* and *Crystallex II* out of court.  A timely opinion from this Court on the DUFTA Issue will thus serve to streamline, or foreclose, these existing suits.[14]

---

[13] The District Court considered the impact of a Third Circuit appeal on related cases under this criterion rather than the "exceptional circumstances" inquiry, stating: "Additionally, because there are now several related cases in which one or both of the identical issues are also presented (*see* [*Crystallex II, ConocoPhillips*]), those related matters may likewise be "materially advanced" by an interlocutory appeal."  D.I. 55 at 4.

[14] In addition, as the District Court noted, the pendency of PDVH's collateral appeal of the FSIA Issue further makes certification and immediate review of the entirety of the District Court's Order—including the DUFTA Issue—the most efficient outcome.  D.I. 55 at 5.

23

Second, in interpreting DUFTA to reach the activities of "non-debtor transferors," the District Court has worked an unprecedented expansion of the scope of liability under the statute in a way that could call into question numerous other transactions where banks or other non-debtor entities merely transfer funds belonging to others. For example, extending the reach of DUFTA to non-debtor transferors that transfer a debtor's property *to* the debtor could deter companies fearful of potential liability from dispensing declared dividends—or even permitting the withdrawal of funds from a bank account—any time the recipient is subject to (even frivolous) litigation. It also threatens to expose previously unassailable transfers to litigation that could surpass the motion to dismiss stage simply by a frustrated creditor *claiming* that a transferor acted at the behest of a debtor. The District Court's interpretation thus threatens to chill myriad financial transactions that, until now, have been conducted in the normal course; this is a circumstance of sufficient legal and economic effect to be considered "exceptional" and warrant immediate resolution by this Court.

## CONCLUSION

For the foregoing reasons, and those spelled out in the District Court's Order certifying the FSIA and DUFTA Issues for interlocutory appeal, PDVH respectfully requests that this Court exercise the discretion afforded to it by § 1292(b) to immediately review the District Court's order denying, in part, PDVH's motion to dismiss.

Dated: January 6, 2017

Respectfully submitted,
/s/ Nathan P. Eimer
Nathan P. Eimer
neimer@eimerstahl.com
Lisa S. Meyer
lmeyer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
312-660-7600

and

Kenneth J. Nachbar
knachbar@mnat.com
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
302-351-9294

*Attorneys for Defendant-Petitioner*
*PDV Holding, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, I caused the foregoing

**Petition of Defendant-Petitioner PDV Holding, Inc. for Leave to**

**File Appeal Pursuant to 28 U.S.C. § 1292(b)** to be served via

electronic mail and via U.S. Mail to counsel for the plaintiff/respondent,

as follows:

Raymond J. DiCamillo
dicamillo@rlf.com
Travis S. Hunter
hunter@rlf.com
Jeffrey L. Moyer
moyer@rlf.com
Richards Layton & Finger
920 North King Street
One Rodney Square
Wilmington, DE 19801

/s/    Nathan P. Eimer

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of FED. R. APP.

   P. 5(c)(1) because this brief contains 4,985 words, excluding the

   parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface and type style requirements of

   FED. R. APP. P. 32(a)(5)–(6) because this brief has been prepared in

   a proportionally spaced typeface using Microsoft Word 2013 word

   processing software in Century Schoolbook typeface, 14 point, and

   12 point for footnotes.

/s/    Nathan P. Eimer
Nathan P. Eimer
Lisa S. Meyer
Kenneth J. Nachbar

*Attorneys for Defendant-Petitioner
PDV Holding, Inc.*

Dated:  January 6, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | |
| Plaintiff, | |
| v. | Civil Action No. 15-1082-LPS |
| PETRÓLEOS DE VENEZUELA, S.A.; PDV HOLDING, INC.; and CITGO HOLDING, INC., f/k/a PDV AMERICA, INC., | |
| Defendants. | |

Raymond J. DiCamillo, Jeffrey L. Moyer, and Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Del.

Robert L. Weigel, Jason W. Myatt, and Rahim Moloo, GIBSON, DUNN & CRUTCHER LLP, New York, N.Y.

      Attorneys for Plaintiff Crystallex International Corp.

Kenneth J. Nachbar, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Del.

Nathan P. Eimer and Lisa S. Meyer, EIMER STAHL LLP, Chicago, Ill.

      Attorneys for Defendants PDV Holding, Inc. and CITGO Holding, Inc.

**MEMORANDUM OPINION**

September 30, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   BACKGROUND

This action is rooted in a dispute over the Bolivarian Republic of Venezuela's alleged

unlawful expropriation of certain mining rights and investments belonging to a Canadian

company, Plaintiff Crystallex International Corporation ("Crystallex"). Plaintiff alleges that

Venezuela, aware of the possibility of a large award against it in an ensuing World Bank

arbitration, orchestrated a scheme to monetize its American assets and pull the proceeds out of

the United States, in order to evade potential arbitration creditors. (*See generally* D.I. 1)

Defendants PDV Holding, Inc. ("PDVH") and CITGO Holding, Inc. ("CITGO Holding")

(together, "CITGO Defendants"), both Delaware corporations, are wholly-owned subsidiaries of

Petróleos de Venezuela, S.A. ("Petróleos"). Plaintiff contends that Petróleos, a state-owned

Venezuelan company, is an *alter ego* of the Venezuelan government. Plaintiff alleges that

Venezuela and Petróleos caused CITGO Holding to issue $2.8 billion in debt, the proceeds from

which were later paid to its parent company, PDVH, as a dividend. PDVH then transferred this

sum further up the ladder and out of the U.S. by issuing a dividend in the same amount to its own

parent, Petróleos. In Plaintiff's view, this series of events (the "Transaction(s)") was carried out

in order to repatriate funds to Venezuela, where they would be "safe from execution by

creditors." (D.I. 14 at 6; *see generally* D.I. 1)

Plaintiff filed a Complaint (D.I. 1) with this Court asserting claims based on the Delaware

Uniform Fraudulent Transfer Act ("DUFTA"), 6 Del. C. § 1301 *et seq*., and civil conspiracy.

Plaintiff seeks a judgment ordering the return of $2.8 billion in Transaction proceeds to the

United States, awarding money damages against Defendants in the alternative, and enjoining the

1

further transfer of remaining funds or assets out of the United States.

CITGO Defendants moved to dismiss the Complaint for failure to state a claim. (D.I. 8) The parties have completed briefing (*see* D.I. 9, 14, 15, 23[1]) and the Court heard oral argument on July 12, 2016. (*See* D.I. 29 ("Tr."))

## II.   LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1]At oral argument the Court granted Plaintiff's motion for leave to file a sur-reply brief. (*See* D.I. 18, 22)

(2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element" of a plaintiffs claim. *Wilkerson*

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation

marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power &*

*Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v.*

*Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.    DISCUSSION

CITGO Defendants contend that Plaintiff's DUFTA claim fails as a matter of law and

that a claim for civil conspiracy cannot be built on DUFTA. They further contend that Plaintiff's

claims are barred by the Foreign Sovereign Immunities Act ("FSIA") as well as the act of state

doctrine. For the reasons given below, CITGO Defendants' motion will be denied in part and

granted in part.

### A.    Delaware Uniform Fraudulent Transfer Act

DUFTA provides in relevant part that "[a] transfer made . . . by a debtor is fraudulent as

to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the

debtor made the transfer or incurred the obligation [w]ith actual intent to hinder . . . any creditor

of the debtor." 6 Del. C. § 1304(a)(1). CITGO Defendants contend that Plaintiff's DUFTA

claim suffers from two fatal flaws: (i) there was no "transfer" made under the statute, because the

Transactions did not involve movement of "property of a debtor;" and (ii) there was no relevant

3

transfer made "by a debtor."[2] *See* 6 Del. C. §§ 1301, 1304.

### 1.    Existence of a "Transfer"

A DUFTA "transfer" includes "every mode, direct or indirect, . . . of disposing of or parting with an asset or an interest in an asset." *Id.* § 1301(12). An "asset" is defined broadly as a debtor's "property," and "property" is in turn identified as "anything that may be the subject of ownership." *Id.* § 1301(2), (10). In short, in order for a fraudulent transfer to exist under the statute, there must be some transfer of debtor property involved.

CITGO Defendants emphasize that, although they are wholly-owned direct and indirect subsidiaries of Petróleos, basic tenets of corporate law dictate that Petróleos has no ownership interest in CITGO Defendants' assets. As CITGO Defendants note, "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary," and "[t]he fact that the shareholder is a foreign state does not change the analysis." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *see also Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (stating sole shareholder's corporate "robotic tools" are "nevertheless in the eyes of the law separate legal entities with rights and duties"). As neither Venezuela nor Petróleos has any ownership interest in CITGO Defendants' assets, it follows, in CITGO Defendants' view, that no "transfer" of debtor property has occurred.

Plaintiff, urging the Court to look at the "economic reality" of the Transactions, counters that the proceeds of the Transactions were substantively Venezuelan property at all relevant times, and that the Transactions merely changed the "form" of these assets. (D.I. 14 at 11-13)

---

[2]Venezuela is not a party to this action. In deciding the motion, the Court accepts as true Plaintiff's allegation that Petróleos is Venezuela's *alter ego* (*see* D.I. 1 at 18-33) and is, therefore, an alleged "debtor . . . liable on a claim." *See* Del. C. § 1301(6).

4

Plaintiff's argument, at its root, is that Petróleos's extraction of value from its wholly-owned subsidiaries diminishes the value of Petróleos's equity interest in those subsidiaries and qualifies as a "transfer" of a debtor's property under DUFTA. (D.I. 14 at 13)

In the absence of specific guidance from the Supreme Court of Delaware, this Court's role is to "predict how that tribunal would rule" on this issue of state law. *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014) (internal quotation marks omitted). Decisions of Delaware's lower courts are not controlling but are given "due deference." *Id.*

CITGO Defendants cite to the Delaware Court of Chancery's recent decision in *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, 2016 WL 769586 (Del. Ch. Feb. 18, 2016). That case involved a Chapter 7 bankruptcy trustee's efforts to unwind a subsidiary's transfer of assets to a third party. The court held that transactions involving a subsidiary's assets, even if they reduce the value of the parent's stock in the subsidiary, are not transfers of the parent's property. *Id.* at *3 ("[A]n act of a subsidiary that decreases the value of the shares of the subsidiary owned by its parent does not confer to a trustee of the parent standing to challenge the subsidiary's transfer.").[3]

Plaintiff responds in part by citing to *Roseton OL, LLC v. Dynegy Holdings Inc.*, 2011 WL 3275965 (Del. Ch. July 29, 2011). In *Roseton*, the Court of Chancery was confronted with a

---

[3]Although a DUFTA claim was involved in the litigation, the *Spring Real Estate* court was focused instead on application of the bankruptcy code. *See* 2016 WL 769586, at *3 ("Property of the debtor is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.") (internal quotation marks omitted). This does not, however, diminish the case's persuasiveness. The bankruptcy code's provisions are similar to – and perhaps even broader than – the DUFTA provisions at issue in this case. *Compare* 11 U.S.C. § 541(a)(1) (estate comprises "all legal or equitable interests of the debtor," with certain exceptions) *with* 6 Del C. § 1301(10) (debtor's property is "anything that may be the subject of ownership.").

5

dispute in which a lessor plaintiff sought to enjoin a series of transactions carried out by a

guarantor. The lessor and guarantor had entered into an agreement that restrained the guarantor

defendant's ability to dispose of substantially all of its assets. The guarantor wished to carry out

a reorganization that would include transfers of direct subsidiary equity and substantial assets

owned by indirect subsidiaries. Plaintiff suggests that the reason *Roseton* found "there was no

fraudulent transfer because the transaction actually improved the debtor's ability to meet its

financial obligations." (D.I. 14 at 14)

Contrary to Plaintiff's view, *Roseton* is another guidepost suggesting that a transfer of

embedded "value" – rather than of directly-held assets – is not a "transfer" of an "asset" on which

a DUFTA claim may stand.[4] *Roseton* held that the plaintiff likely[5] had not alleged a "necessary

predicate transfer" on which a DUFTA claim could be based. *Id.* at *15. This conclusion rested

on a finding that "Plaintiffs' allegations as to the [subsidiaries' assets] at issue do not involve the

'transfer' of any 'asset' of [the parent company defendant] because [the defendant] does not

directly own any of [its subsidiaries' assets] subject to transfer in the Proposed Transaction," but

rather "owns equity interests in multiple subsidiaries that directly own the physical assets." *Id.*

The court's attention to the value embedded in those equity interests was limited to a separate

analysis underlying its observation that, even if a "predicate transfer" was alleged, the plaintiff

was unlikely to succeed in showing lack of reasonably equivalent value in the proposed

transactions. *See id.* at *15-16.

---

[4]The footnote Plaintiff cites to is no more than a recognition that the *Roseton* defendant's movement of directly-owned equity could be a DUFTA "transfer." This is not in dispute.

[5]The *Roseton* court's decision was an application of "something . . . akin to the preliminary injunction standard." 2011 WL 3275965, at *8.

6

The Court finds these cases persuasive and useful in predicting how the Supreme Court of Delaware would rule if confronted with the issue presented here. "Delaware public policy does not lightly disregard the separate legal existence of corporations." *Spring Real Estate,* 2016 WL 769586, at \*3 n.35 (internal quotation marks omitted). "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999) (internal quotation marks omitted).

Fraudulent transfer laws exist to preserve a creditor's ability to satisfy claims. It follows that a debtor's "property" is therefore best understood as that which would have been available to satisfy the creditor's claim but-for the fraudulent transfer, according due respect to the corporate form. *See Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 154 A.2d 684, 687 (Del. 1959) ("A creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent."); *United States v. Patras,* 544 F. App'x 137, 144 (3d Cir. 2013) (explaining that New Jersey fraudulent transfer law "focuses on the transfer of property that would otherwise be available to creditors").[6]

For as long as the Transactions' proceeds were assets of CITGO Defendants rather than

---

[6]Plaintiff quotes *Mitchell v. Lyons Professional Services, Inc.,* 109 F. Supp. 3d 555, 565 (E.D.N.Y. 2015), for the proposition that "fraudulent transfer laws bring within them not only transfers of property, but any transaction done with the intent to 'hinder' or 'delay' creditors," including transfers that diminish the value of a property interest. (D.I. 14 at 8) The *Mitchell* court applied New York's fraudulent conveyance law, which differs from DUFTA. *Compare* N.Y. Debt. & Cred. Law § 276 ("Every conveyance made . . . with actual intent . . . to hinder . . . creditors, is fraudulent . . . .") *and* N.Y. Debt. & Cred. Law § 270 (defining "conveyance" broadly as "every payment of money, . . . transfer, . . . or pledge of tangible or intangible property") *with* 6 Del. C. § 1301(2), (12) ("transfer" requires disposition of "property of a debtor").

7

Petróleos, Plaintiff would not have had any right to those funds – unless CITGO Defendants'
corporate forms were disregarded through reverse veil piercing or if CITGO Defendants were
deemed agents of Petróleos. *See Buechner*, 154 A.2d at 687. The Complaint does not allege that
CITGO Defendants are *alter egos* of Venezuela or Petróleos. (*See generally* D.I. 1)[7] It follows
that Plaintiff's assertion that "the \$2.8 billion currently in the possession of Petróleos and
Venezuela was always the property of the debtor" is incorrect.

Still, the Transactions can be characterized as more than the mere movement of
embedded value or depletion of asset value; they allegedly involve the ultimate extraction of that
value by the "debtor" itself. Plaintiff observes that, for at least some time between PDVH's
declaration of a dividend and the transfer of that dividend to Petróleos, "PDVH indisputably had
assets of [Petróleos] in its possession." (D.I. 14 at 12 n.3) This declared but then as-yet unpaid
dividend might theoretically have been available to satisfy Plaintiff's claim.[8] Because the unpaid
dividend was Petróleos's property,[9] at least some transfer of "property of a debtor" would have

---

[7]Even if the Complaint contained such an allegation, whether Delaware law recognizes
reverse veil piercing is an unsettled question. *See Sky Cable, LLC v. Coley*, 2016 WL 3926492,
at *13, *18 (W.D. Va. July 18, 2016) (holding that Delaware law would recognize reverse veil-
piercing claim even though "Delaware appellate courts have never expressly recognized [it]"); *In
re ALT Hotel, LLC*, 479 B.R. 781, 801-03 (Bankr. N.D. Ill. 2012) (collecting cases).

[8]The FSIA's impact on this particular point is discussed below.

[9]*See, e.g., Smith's Estate v. C.I.R.*, 292 F.2d 478, 479 (3d Cir. 1961) ("[W]henever a
lawful dividend on particular stock is fully declared each stockholder becomes a creditor of the
corporation with a vested right to be paid a specified sum at some future time."); *U.S. Indus., Inc.
v. Anderson*, 579 F.2d 1227, 1230 (10th Cir. 1978) ("Dividends which are declared but unpaid
are merely a corporate debt owed to the shareholders and failure to pay such dividends when due
gives the shareholders a Cause of action on the debt."); *In re Classic Coach Interiors, Inc.*, 290
B.R. 631, 636 (Bankr. C.D. Ill. 2002) ("By no means is a declared but unpaid dividend an asset
of the corporation, although it is an asset of the shareholders to whom it is owed."). *Cf. NBC
Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *10 (Del. Ch. Apr. 29, 2005)

8

occurred as part of the Transactions.

CITGO Defendants contend that this "transfer" fails to save Plaintiff's DUFTA claim because it was not made "by a debtor," and further that the FSIA and act of state doctrine bar the claim regardless. CITGO Defendants argue that, at the very least, CITGO Holding must be dismissed if this final dividend is the sole DUFTA "transfer." The Court turns to these arguments in the following sections.

### 2. Whether any Transfer was Made "by a debtor"

DUFTA's plain language requires that the transfer be undertaken "by a debtor." 6 Del. C. § 1304(a)(1). CITGO Defendants correctly point out that, in the narrowest sense of the term, none of the Transactions at issue, including the final dividend payment, are alleged to have been directly undertaken "by" the "debtor" (i.e., Venezuela or its alleged alter ego, Petróleos). Petróleos was a transferee.

Yet DUFTA includes within its ambit "indirect . . . mode(s) . . . of disposing of or parting with an asset or an interest in an asset." 6 Del. C. § 1301(12). Moreover, "a court must begin with the statutory language," and courts presume that legislatures express their intent "through the ordinary meaning of the words" used in that language. *Delaware Cty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014) (internal quotation marks omitted). Merriam-Webster's definitions for the word "by" include "through the agency or instrumentality of" and "on behalf of."[10] In deciding this motion, the Court must accept as true Plaintiff's allegations of

---

(characterizing unpaid dividend as corporate liability); 6 Del. C. § 1306(4) ("A transfer is not made until the debtor has acquired rights in the asset transferred.").

[10] Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/by (last visited September 29, 2016).

Venezuela's and/or its *alter ego*'s extensive, if not dominating, involvement in the Transactions. The only reasonable view of the Transactions, as alleged, is of an extraction of funds orchestrated by and carried-out under orders from Venezuela and/or Petróleos; that is, a transfer made in every meaningful sense "by a debtor." On this view, which the Court accepts at this stage of the proceedings, the Transactions were directly executed by an "instrumentality of" the debtor or on its "behalf" and, in that respect, "by" the debtor. *See id.*

The Complaint alleges a transfer of a debtor's property at the debtor's behest. It therefore properly alleges the existence of a fraudulent transfer under DUFTA. *See* 6 Del. C. § 1304(a).

### 3.    Proper Defendants

CITGO Defendants note that "there is no debtor-creditor relationship" between them and Plaintiff. (D.I. 9 at 7) Delaware courts, in rejecting attempts to extend DUFTA liability to aiders and abettors, have noted that "the only proper defendants in a fraudulent conveyance action . . . are the transferor and any transferees." *Quadrant Structured Products Co. v. Vertin*, 102 A.3d 155, 203 n.17 (Del. Ch. 2014) (internal quotation marks omitted). In virtually every case, the "transferor" is more specifically a "debtor-transferor." *See, e.g., Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, at \*2 (Del. Ch. Mar. 3, 2010) ("[DUFTA] only provides for a cause of action by a creditor against debtor-transferors or transferees."). Here, neither of the CITGO Defendants is a debtor or transferee.[11]

---

[11]Plaintiff argues that CITGO Defendants are transferors and transferees, based on its argument that the Transactions' proceeds were always substantively Venezuelan property and, hence, property of a debtor at every stage. As explained above, the Court rejects this argument and finds that no transfer of a debtor's property occurred until the final dividend was declared and the Transactions' proceeds became assets of Petróleos. The final dividend is the relevant "transfer," which makes PDVH a transferor.

10

PDVH's continued presence in this action is appropriate. The unique circumstances of the case make PDVH a non-debtor transferor. DUFTA does not explicitly preclude the presence of such a transferor; all that DUFTA requires is a transfer of the debtor's property with sufficient involvement of the debtor. DUFTA broadly provides for the application of "the principles of law and equity" unless "displaced by [DUFTA's] provisions." 6 Del. C. § 1310. The Court has already concluded that the Complaint alleges a fraudulent transfer to which PDVH was a direct party, making it an appropriate defendant in this case. Plaintiff is not barred from asserting a DUFTA claim on these facts. Instead, under the circumstances, it would be anomalous to dismiss PDVH because it was merely a transferor rather than a debtor-transferor.

Whether CITGO Holding is also a proper party is less clear. CITGO Defendants contend that treatment of the final dividend as the relevant "transfer" requires CITGO Holding's dismissal from the case. (D.I. 15 at 4 n.4) Plaintiff counters that the Transactions should be "collapsed" and viewed as a single event. Bankruptcy courts use the "collapsing doctrine" to simplify transactions and boil them down to their true substantive nature. *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 160 (3d Cir. 2014) (describing collapsing doctrine as "an equitable tool by which a court may 'collapse' multiple apparently innocuous transactions for purposes of a fraudulent transfer analysis and consider the economic reality of the integrated whole"). Applying the doctrine here might support an argument that CITGO Holding is a transferor as well.

The collapsing doctrine is often used to analyze the motivations for a transfer as opposed to whether (and when) a transfer of debtor property occurred in the first place. *See, e.g., In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 547 (D. Del. 2005) ("[I]n evaluating the validity of the

11

Transaction, the court considers it as one transaction."). This is not the issue the Court faces

here. Rather, the DUFTA analysis focuses on whether and when "property of a debtor" was

"transferred" and, if so, who the parties to that transfer were. The Court has not encountered any

case applying the collapsing doctrine in such a circumstance.

The Court concludes that the collapsing doctrine does not cleanly fit this case, as its

application would effectively alter the "form" of the Transactions rather than their substantive

nature. The latter is not in dispute at this stage. The doctrine's application would have the effect

of (i) turning CITGO Holding into a substantive transferor, which would impermissibly imply

Petróleos held property rights in Transaction funds prior to the final dividend declaration; and/or

(ii) impermissibly treat CITGO Holding as an accomplice or co-conspirator. *See Quadrant

Structured Products*, 102 A.3d at 203 n.17. It would also be inconsistent with the condition that

"a transfer is not made until the debtor has acquired rights in the asset transferred." 6 Del. C.

§ 1306(4).

In sum, Plaintiff's DUFTA claim strains the statute's structure. Nevertheless, the

Complaint alleges a fraudulent transfer, and DUFTA provides for a range of remedies that may

be appropriate.[12] Under the circumstances, PDVH, a non-debtor transferor of debtor property, is

an appropriate defendant. In contrast, CITGO Holding will be dismissed from the case, because

it was not a party to a fraudulent transfer under DUFTA and cannot be held liable as an

accomplice or co-conspirator.

---

[12]Because the discussion relating to remedies under the unique circumstances of this case
is heavily wrapped up in sovereign immunity issues, the Court defers it to its FSIA analysis
below.

12

## B.    Civil Conspiracy

CITGO Defendants contend that, even if Plaintiff's DUFTA claim survives their motion,
Plaintiff's civil conspiracy claim must be dismissed. (D.I. 9 at 10) CITGO Defendants cite to
*Edgewater Growth Capital*, 2010 WL 720150, at \*2, for the proposition that "[DUFTA] does not
create a cause of action for aiding and abetting, or conspiring to commit, a fraudulent transfer."
Plaintiff responds that the rationale in *Edgewater* is inapplicable here because Plaintiff's civil
conspiracy claim "is not an attempt to extend liability to non-transferors or transferees, but rather
an alternative path to relief against the same defendants that are liable under DUFTA." (D.I. 14
at 20)

Putting aside that a conspiracy claim would in fact "attempt to extend liability" to CITGO
Holding, which the Court has found is not a transferor or transferee, this "alternative path to
relief" is inconsistent with Delaware law. In *Quadrant Structured Products*, 102 A.3d 155 at
203, the Court of Chancery reiterated the principal that "[u]nder Delaware law, a conspiracy
cannot be predicated on fraudulent transfer" (internal quotation marks omitted). *Quadrant* went
on to note that "[t]o the extent [the civil conspiracy count] seeks to impose secondary liability
based on primary wrongs pled in [the fraudulent transfer counts], it fails to state a claim on which
relief can be granted." *Id.* Accordingly, Plaintiff's civil conspiracy claim will be dismissed.

## C.    Foreign Sovereign Immunities Act

CITGO Defendants contend[13] that "to the extent that Plaintiff . . . targets the property of

---

[13]The parties disagree as to whether CITGO Defendants have standing to assert FSIA
immunity on Venezuela's behalf. But even if CITGO Defendants lack standing to do so, the
apparent involvement of sovereign property requires the Court to consider the FSIA's application
on its own motion. *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-28 (9th Cir.
2010) (collecting cases); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011), as

13

Venezuela," the FSIA, 28 U.S.C. § 1602 *et seq.*, requires dismissal of Plaintiff's claims. (D.I. 9 at 11) The FSIA provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution," subject to certain exceptions. 28 U.S.C. § 1609; *see also* §§ 1610, 1611. CITGO Defendants argue that Plaintiff's claim is barred by the FSIA's prohibition of prejudgment attachments, and that the remedies sought by Plaintiff are similarly impermissible.

**1.    Is Plaintiff's Action Barred by the FSIA's Prejudgment Immunity?**

The FSIA bars "attachment[s] prior to the entry of judgment" in the absence of explicit waiver by a foreign sovereign of that immunity. 28 U.S.C. § 1610(d).[14] CITGO Defendants argue that the FSIA preempts Plaintiff's state-law fraudulent transfer claim, based on CITGO Defendants' characterization of the claim as "prejudgment" in nature. Because the Transactions took place prior to entry of any judgment, CITGO Defendants contend, any liability for those transfers is the equivalent of a prejudgment attachment, from which Venezuela is protected by virtue of the FSIA's prejudgment immunity.

Underlying this argument is the principle that, to the extent the Transactions involved Venezuelan property, Venezuela and/or its *alter ego* were presumptively free to move their property in and out of the U.S. unencumbered. *See Rubin*, 637 F.3d at 799. CITGO Defendants

corrected (Apr. 1, 2011) ("[T]he court must address [the immunity] regardless of whether the foreign state appears and asserts it.").

[14]Plaintiff has not specifically alleged any waiver on Venezuela's part of its FSIA immunity with respect to the Transactions, and it appears undisputed that no waiver had occurred at the time the Transactions were undertaken. Counsel for Plaintiff suggested at oral argument that Venezuela's participation in the related arbitration in Washington, D.C., may constitute "waiver [as] to any assets that are in the United States." (Tr. at 54) The Court need not address the waiver issue because it does not view Plaintiff's DUFTA claims as prejudgment in nature.

14

argue that DUFTA is preempted by "Congress's judgment that U.S. courts cannot interfere with the use or disposition of a foreign state's property before a judgment has been entered." (D.I. 9 at 13) To CITGO Defendants, Plaintiff's present assertion of a DUFTA claim seeks to impose liability based on a transfer that was immunized when it occurred. Again, CITGO Defendants believe this is the equivalent of seeking an invalid prejudgment attachment of Transaction proceeds. *(See* Tr. at 77 ("[T]here is no question that DUFTA essentially [im]mobilizes assets in this country or creates liability if you do, which is the same thing as immobilizing."))

CITGO Defendants, therefore, read the FSIA to prohibit fraudulent transfer liability for transfers undertaken by foreign sovereigns prior to the entry of judgment. They argue that any liability from such purportedly "lawful" conduct would frustrate Congress's objectives in enacting the FSIA. *(See, e.g.,* Tr. at 18-19 ("[C]reating liability in [CITGO Defendants] basically . . . means there was . . . a penalty for . . . Venezuela moving its money overseas."))

The Court is not persuaded by CITGO Defendants' attempt to stretch the statute's "immun[ity] from attachment arrest and execution," *id.* § 1609, to become immunity from all liability for the transfer of property that was non-attachable at the time of transfer. No direct support is offered for CITGO Defendants' proposition that attachment immunity equals lawfulness and, therefore, precludes all conceivable forms of potential liability. There is nothing in the FSIA's text that bars eventual liability for a transfer of property which was immune from attachment when the transfer was made. To the contrary, the Act provides that, "[a]s to any claim for relief with respect to which a foreign state is not entitled [jurisdictional immunity from suit], the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

15

Neither the parties nor the Court have identified any case on point. (*See generally* Tr. at 76-77) CITGO Defendants cite a number of cases for the proposition that the FSIA bars "the application of any state law, court process, or order that immobilizes the assets of a foreign sovereign." (D.I. 9 at 12) As the Second Circuit has stated, "[t]he FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property." *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983). The cases cited by CITGO Defendants dealt principally with provisional remedies sought during the pendency of an underlying civil action. But Plaintiff's DUFTA claim does not seek a prejudgment "restraint;" it seeks relief based on an alleged scheme to devalue certain potentially executable assets, relief that would only be obtained (or, from Defendants' perspective, imposed) *after* judgment is entered in this case.

CITGO Defendants also rely on *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75 (2d Cir. 2014). In that case, the Second Circuit dismissed as moot an appeal of a decision denying attachment of certain funds because the funds had, in the meantime, been "transferred to Grenada . . . [and] became part of the undifferentiated property of the sovereign." *Id.* at 86. The rationale there was based on mootness; the property sought no longer existed for attachment. *Id.* at 86-87. Here, however, the relief sought is not limited to (and will not necessarily even include) the return of sovereign property held abroad.

CITGO Defendants' approach overreads the FSIA's provisions. Pursuing a remedy based on a prejudgment transfer is not the same as attaching funds prior to the entry of judgment, even if the pursuit of that remedy might discourage transfers of immunized property under certain

16

circumstances.

For these reasons, the Court does not view Plaintiff's fraudulent transfer claim as barred

by the FSIA, notwithstanding Plaintiff's attempt to impose liability based on a transfer of funds

which would not have been attachable when the Transactions were carried out.[15]

### 2.    Does the FSIA Preclude the Remedies Sought by Plaintiff?

The Court's finding above does not free Plaintiff's DUFTA claim from FSIA scrutiny.

Plaintiff seeks a judgment potentially directing the return of $2.8 billion in Transaction proceeds

to the United States, or in the alternative a damages award. Plaintiff also seeks a judgment

enjoining Defendants from transferring any remaining Transaction proceeds out of the United

States and further enjoining any other attempts to remove assets from the United States.

CITGO Defendants question whether the $2.8 billion transfer from PDVH to its parent

company is a "voidable" transfer under DUFTA. As CITGO Defendants note, federal courts

"generally lack authority in the first place to execute against property in other countries,"

*Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257 (2014); *see also Walters v.*

*People's Republic of China*, 672 F. Supp. 2d 573, 574 (S.D.N.Y. 2009) ("[U]nder the FSIA,

assets of foreign states located outside the United States retain their traditional immunity from

execution to satisfy judgments entered in United States courts.") (internal quotation marks

omitted); *Ex-Im Bank of China*, 768 F.3d at 86-87. A finding that the dividend transfer is not

---

[15]To the extent that CITGO Defendants are suggesting that any DUFTA relief that
Plaintiff seeks related to the alleged expropriation of its assets is "prejudgment" for purposes of
applying the FSIA unless and until an arbitration award is confirmed, the Court is unpersuaded
by that argument as well. Neither the Complaint nor any motion filed in this matter requests
provisional relief. Rather, Plaintiff seeks a final resolution on the merits of its fraudulent transfer
claim.

17

"voidable" might also bar Plaintiff's alternative claim for damages. *See* 6 Del. C. § 1308(b)

(providing "judgment for the value of the asset transferred" is available "to the extent a transfer

is voidable").

But even if PDVH prevails in persuading the Court these remedies are precluded (an

issue the Court does not today decide), other types of relief remain available to Plaintiff. As

noted above, DUFTA incorporates broader equitable principles, *see id.* § 1310, and those

principles allow the Court to craft "any . . . relief the circumstances may require," *id.*

§ 1307(a)(3)(c); *see also In re Mobilactive Media, LLC*, 2013 WL 297950, at *32 (Del. Ch. Jan.

25, 2013) ("DUFTA provides broad remedies to creditors and leaves considerable leeway for the

exercise of equitable discretion."). Assuming that Plaintiff obtains a final judgment on the merits

in its favor, CITGO Defendants offer no convincing explanation as to why, for example, PDVH

could not at least be enjoined from further transfer of its assets out of the country. *See* 6 Del. C.

§ 1307(a) (providing for "relief against a transfer," including injunction against "further

disposition by the debtor or a transferee, or both, of the asset transferred or of other property").

The FSIA may ultimately limit the types of relief available to Plaintiff, should it prevail

on the merits of its DUFTA claim. However, CITGO Defendants have failed to show that the

FSIA precludes all of Plaintiff's requested relief. As a result, the FSIA does not require dismissal

of this action.

18

### D.    Act of State Doctrine[16]

CITGO Defendants contend that Plaintiff's claims are barred by the act of state doctrine,

because resolution of Plaintiff's claim "would call into question the validity of an official act

performed within the sovereign's territory." (D.I. 15 at 7)  The act of state doctrine's application

involves balancing the national interest with the desire of litigants to obtain decisions on the

merits of their claims.  *See Envtl. Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1058 (3d

Cir. 1988).  Due to the tension inherent in such a balance, the Supreme Court has not imposed

"rigid rules to govern the doctrine's application," leaving district courts responsible for making

the determination on a case-by-case basis.  *Id.*  As part of this analysis, courts are called upon to

"analyze the nature of the questioned conduct and the effect upon the parties in addition to

appraising the sovereign's role."  *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287,

1293 (3d Cir. 1979).  The doctrine is "not lightly to be imposed."  *Id.*; *see also Envtl. Tectonics*,

847 F.2d at 1060 n.9 (expressing "concerns with too sweeping an application of the doctrine").

On one side of the scale is Plaintiff's significant interest in litigating the propriety of the

Transactions and potentially obtaining a judgment and relief.  On the other side of the scale, there

is no evidence from which the Court could now conclude that litigation of this matter would pose

significant challenges to the executive branch's ability to conduct foreign affairs.  Importantly, in

this litigation the Court is ***not*** being asked to adjudicate Venezuela's actions with respect to

---

[16]During oral argument, counsel for Plaintiff suggested for the first time that CITGO
Defendants lack standing to assert the act of state doctrine. (*See* Tr. at 28-29)  Even if this
contention is not deemed waived, and even if CITGO Defendants lack standing to raise the
doctrine, the Court can and would raise the doctrine on its own motion.  *See Hourani v.
Mirtchev*, 796 F.3d 1, 12 n.6 (D.C. Cir. 2015) ("Because the Act of State doctrine is a rule of
judicial restraint, courts may raise the doctrine *sua sponte*.").

Plaintiff's mining rights. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964)

(concluding act of state doctrine prohibited challenge to validity of expropriation). Instead, it

need only assess the decisions to move monies in a possible attempt to hinder creditors.

Furthermore, much of the conduct put at issue by Plaintiff's claims took place within the United

States. *See generally Envtl. Tectonics*, 847 F.2d at 1057-58 (act of state doctrine requires courts

to refrain from "judging the validity of a foreign state's governmental acts in regard to matters

within that country's borders."). Of further note, the Federal Arbitration Act provides that

"confirmation of arbitral awards, and execution upon judgments based on orders confirming such

awards shall not be refused on the basis of the Act of State doctrine." 9 U.S.C. § 15.

The Court will deny the motion to dismiss without prejudice as to the act of state

doctrine. Should the issue be raised again, the parties should consider providing the Court with

evidence of the impact, if any, of the maintenance of this suit on U.S. relations with Venezuela.

## IV.   CONCLUSION

For the reasons explained above, CITGO Defendants' motion to dismiss Plaintiff's claims

will be denied in part and granted in part. CITGO Holding will be dismissed from this action.

An appropriate Order follows.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL CORP.,

Plaintiff,

v.

PETRÓLEOS DE VENEZUELA, S.A.; PDV
HOLDING, INC.; and CITGO HOLDING, INC.,
f/k/a PDV AMERICA, INC.,

Defendants.

Civil Action No. 15-1082-LPS

## ORDER

At Wilmington this **30th** day of **September, 2016,** consistent with the Memorandum

Opinion issued this date,

**IT IS HEREBY ORDERED** that Defendants PDV Holding, Inc. ("PDVH") and CITGO

Holding, Inc.'s Motion to Dismiss (D.I. 8) is

1.   **DENIED** as to Plaintiff's First Cause of Action with respect to PDVH;

2.   **GRANTED** as to CITGO Holding; and

3.   **GRANTED** as to Plaintiff's Second Cause of Action.

**IT IS FURTHER ORDERED** that CITGO Holding is dismissed from this case.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than

**October 7, 2016,** provide the Court with a joint status report.

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL CORP.,

                Plaintiff,

v.

PETRÓLEOS DE VENEZUELA, S.A. and PDV
HOLDING, INC.

                Defendants.

Civil Action No. 15-1082-LPS

### MEMORANDUM ORDER

At Wilmington this **27th** day of **December, 2016**:

Pending before the Court is defendant PDV Holding, Inc.'s ("PDVH") request for

certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (D.I. 41) For the

reasons given below, **IT IS HEREBY ORDERED** that PDVH's motion (D.I. 41) is

**GRANTED**.

1.       Plaintiff Crystallex International Corporation ("Crystallex") filed its Complaint on

November 23, 2015. (D.I. 1) Crystallex alleges that defendant Petróleos de Venezuela, S.A.

("PDVSA") is an *alter ego* of the Bolivarian Republic of Venezuela ("Venezuela"). The

Complaint accuses PDVSA of carrying out a scheme to monetize and repratriate Venezuelan

interests that had been held in the United States in order to evade potential arbitration creditors.

Crystallex seeks relief under Delaware's Uniform Fraudulent Transfer Act, 6 *Del. C.* § 1301 *et*

*seq.* ("DUFTA"). (*See generally* D.I. 1) In its Complaint, Crystallex also names as defendants

PDV Holdings, Inc. ("PDVH"), a Delaware corporation which is a wholly-owned direct

1

subsidiary of PDVSA, and CITGO Holdings, Inc. ("CITGO"), another Delaware corporation,
which is a wholly-owned direct subsidiary of PDVH as well as a wholly-owned indirect
subsidiary of PDVSA. (*See id.* at ¶¶ 12-13)

2.    On February 3, 2016, PDVH and CITGO (together the "CITGO Defendants")
moved to dismiss the Complaint. (D.I. 8) The CITGO Defendants contended that the Complaint
fails to state a DUFTA claim on which relief may be granted and, even if that were not the case,
that Crystallex's DUFTA claim would be barred by the Foreign Sovereign Immunities Act, 28
U.S.C. § 1602 *et seq.* ("FSIA"). (*See, e.g.,* D.I. 9, 15)

3.    On September 30, 2016, the Court issued a Memorandum Opinion and Order on
the CITGO Defendants' motion to dismiss. (D.I. 34, 35) The Court held that the Complaint
adequately states a DUFTA claim as to PDVH and, further, that PDVH failed to show that the
FSIA bars the action in its entirety. (*See* D.I. 34 at 12, 18) With respect to CITGO, the Court
granted the motion to dismiss. (*See id.* at 20)

4.    On October 28, 2016, PDVH filed a notice of appeal with respect to the Court's
FSIA holding. (*See* D.I. 40) In its appeal, PDVH cites *Cohen v. Beneficial Industrial Loan
Corp.*, 337 U.S. 541 (1949), and contends that the Court's FSIA holding is immediately
appealable under the collateral order doctrine, without regard to whether the Court also certifies
the issue under § 1292(b).

5.    Also on October 28, 2016, PDVH filed a motion in this Court requesting that the
Court certify the FSIA issue, as well as its DUFTA holding, for interlocutory review pursuant to
28 U.S.C. § 1292(b). (D.I. 41) After the parties completed briefing (D.I. 42, 47, 52), the Court
heard oral argument on December 20, 2016.

2

6.    Under § 1292(b), this Court has discretion to certify orders for interlocutory
review where "exceptional circumstances" merit a departure from the final judgment rule.
*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotation marks omitted). An
order that (i) addresses a "controlling question of law" as to which there is (ii) "substantial
ground for difference of opinion" may be certified under the statute if (iii) an immediate appeal
"may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see
also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754–55 (3d Cir.1974). Here, all three of these
criteria are satisfied with respect to both the FSIA and DUFTA issues; "exceptional
circumstances" are also present which further persuade the Court to exercise its discretion to
certify both issues for an interlocutory appeal.

7.    *Controlling Issue of Law.*    A controlling question of law "must encompass at the
very least every order which, if erroneous, would be reversible error on final appeal." *Id.* at 755.
The Court's FSIA and DUFTA holdings each involved resolution of complex questions of
statutory interpretation (e.g., whether the FSIA's restrictions on prejudgment attachments apply
to fraudulent transfer claims seeking a final judgment on the merits and whether the Complaint
alleges a transfer "by" a debtor). The Court's conclusions regarding these purely legal issues
were dispositive and would require dismissal of the action if reversed on appeal.

8.    *Substantial Ground for Difference of Opinion.*    Crystallex's creative and
apparently unprecedented fraudulent transfer theory required the Court to resolve novel questions
of law. In doing so, the Court had to choose between two sets of strong, well-supported, and
persuasive arguments. There are substantial grounds for a difference of opinion, notwithstanding
the novelty of the issues. The Court disagrees with Crystallex's suggestion that this criterion for

3

§ 1292(b) certification cannot be satisfied where there are no conflicting decisions issues by courts previously grappling with the issue. (*See* D.I. 47 at 10-11) Even if Crystallex is correct that § 1292(b) "was not intended as a vehicle to provide early review of difficult rulings in hard cases," (*Id.* at 9-10 (quoting *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 354 (S.D.N.Y. 2005)), here the Court's decision to certify is not based solely on the difficulty of the rulings, but on the totality of pertinent factors. At bottom, there are substantial grounds for difference of opinion with respect to this Court's resolution of both the FSIA and DUFTA issues.

9.     *Material Advancement of the Ultimate Termination of the Litigation.* Crystallex contends that certification "will not materially advance the termination of this litigation," and will "only result in substantial delay to Crystallex's detriment." (D.I. 47 at 12) But that is only even possibly true if Crystallex prevails on appeal. Additionally, the "delay" Crystallex fears is not an automatic consequence of the Court's ruling, since it is not clear that discovery will be stayed during the pendency of the appeal (an issue which is not presently before the Court) while it *is* clear that Crystallex does not have a judgment in the United States at this time. Moreover, the statute requires only the *possibility* that interlocutory review would materially advance the litigation. *See* 28 U.S.C. § 1292(b) (providing that district judge should consider whether "immediate appeal *may* materially advance" the litigation) (emphasis added). If the Third Circuit agrees with PDVH and reverses one or both of this Court's holdings, this case would be terminated upon remand. Additionally, because there are now several related cases in which one or both of the identical issues are also presented (*see* C.A. Nos. 16-904-LPS, 16-1007-LPS), those related matters may likewise be "materially advanced" by an interlocutory appeal.

4

10.    *Exceptional Circumstances*.  In addition to all three of the foregoing factors
supporting certification, several "exceptional circumstances" are present, each of which confirms
the appropriateness of certification. *See Chase Bank USA, N.A. v. Hess*, 2011 WL 4459604, at
*2 (D. Del. Sept. 26, 2011). First, an interlocutory appeal is already pending in this case,
meaning that this case already (and indisputably) involves a departure from the final judgment
rule. In light of this reality, the choice this Court confronts is an interlocutory appeal directed to
just one of the two dispositive issues on which this Court has already ruled or an interlocutory
appeal directed to both. The latter option seems more efficient. Second, international comity is
implicated by this case and specifically by the issues this Court has already decided. One need
not accept the full scope of PDVH's foreboding prediction – that "the Court's opinion could do
real harm to the sovereignty interests that the FSIA is designed to protect" (D.I. 42 at 9) – in
order to recognize there is at least some risk of unintended international consequences, which
sets this case apart from the vast majority of others. Relatedly, PDVH insists that the Court's
opinion may unwarrantedly "chill[] the transfer of foreign-owned assets." (D.I. 42 at 8-9) ("If the
Court's ruling is not immediately appealed, banks or other entities currently holding foreign-
owned assets will hesitate before transferring those assets for fear of incurring potentially
massive liability under a state fraudulent transfer statute.") Even if PDVH's fear is mostly
unfounded, an interlocutory appeal holds the promise of eliminating any risk of such an
unintended consequence and doing so relatively quickly. Finally, enormous sums of money are
at stake in this case. The case is based on transfer of $2.8 billion of assets and Crystallex is
holding an arbitration award worth in excess of $1.3 billion. (*See generally* D.I. 18; *see also*
*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 16-661-RC (D.D.C.) D.I. 1)

5

11.    The Court therefore certifies the following questions for interlocutory review:[1]

    (a)    Whether the FSIA attachment immunity provisions,
        28 U.S.C. §§ 1609-1611, preempt state fraudulent
        transfer laws to the extent that they effectively
        restrain immunized property of a foreign sovereign
        debtor or impose liability on non-debtor transferors
        for prejudgment transfers of immunized property.

    (b)    Whether the phrase "by a debtor" in DUFTA, 6 Del.
        C. § 1304(a)(1), applies to "non-debtor transferors"
        deemed to be acting on the debtor's behalf, absent
        allegations of alter ego or piercing the corporate
        veil.

12.    The Court's September 30, 2016 Order (D.I. 35) is **AMENDED**[2] to incorporate

the Court's analysis and conclusions above.

13.    **IT IS FURTHER ORDERED** that the parties shall meet and confer and submit,

no later than **January 4, 2017**, a joint status report with their proposal(s) for whether and how

discovery should proceed in this matter during the pendency of PDVH's appeal.

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[1]The questions as stated are those proposed by PDVH. (*See* D.I. 42 at 5, 9)  Crystallex did not offer a counterproposal or specific criticisms of PDVH's stated questions.  The Court is aware that regardless of whether and how particular questions are stated by this Court, the September 30 Order may be reviewed in its entirety by the Court of Appeals. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 366 (3d Cir. 1999).

[2]Section 1292(b) provides that the grounds for certification of an "order not otherwise appealable . . . shall . . . [be] state[d] in writing in such order."